UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LEE'S FORD DOCK, INC., *et al.* | CASE NO. 12-60818 |
| DEBTORS IN POSSESSION | JOINTLY ADMINISTERED |

**DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS
TO OBTAIN FIRST-PRIORITY SECURED POSTPETITION
FINANCING AND RELATED RELIEF**

Come Lee's Ford Dock, Inc., Hamilton Brokerage, LLC, Hamilton Capital, LLC, Lee's Ford Hotels, LLC, Lee's Ford Woods, LLC, and Top Shelf Marine Sales, Inc. (collectively, the "Debtors"), by counsel, as jointly-administered debtors and debtors in possession, and pursuant to 11 U.S.C. §§ 105(a), 361, 362(d), 363(b), and 364(d), Fed. R. Bankr. P. 4001(b), (c), and (d), Fed. R. Bankr. P. 6004(h), and EDKY LBR 4001-2, hereby move the Court for the entry of an order: (a) authorizing Debtor Lee's Ford Dock, Inc. to obtain first-priority, secured postpetition financing in the form of a Five Hundred Thousand Dollar ($500,000.00) revolving line of credit (the "DIP Loan") from Community Trust Bank, Inc. (the "DIP Lender"); (b) authorizing the remaining Debtors to guarantee the DIP Loan; (c) authorizing all of the Debtors to grant the DIP Lender first-priority liens on all of the Debtors' assets as security for the DIP Loan; (d) authorizing the Debtors to pay the DIP Lender for all reasonable and customary fees, costs, and expenses up to a maximum of $23,000 incurred in connection with obtaining the DIP Loan; and (e) modifying the automatic stay to allow the DIP Lender to take such actions as necessary to finalize the DIP Loan transaction (the "Motion"). In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. On July 4, 2012 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). The Debtors are operating their businesses as debtors and debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. This Court has jurisdiction over these Chapter 11 cases under 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(D) and (M).

3. The Debtors maintain their principal places of business in Pulaski County, Kentucky. Accordingly, venue for the Debtors' Chapter 11 cases is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4. No trustee or examiner has been appointed in these Chapter 11 cases, and no creditors' committee or other official committee has been appointed.

**BACKGROUND**

**General Background**

5. The Debtors collectively operate as "Lee's Ford Resort & Marina," which consists of a boat dock (the "Dock"), lodging facilities (the "Lodging Facilities"), the Harbor Restaurant & Tavern (the "Restaurant"), a retail store (the "Ship's Store"), and a boat brokerage business on Lake Cumberland in Nancy, Kentucky. The Debtors' operations are hereinafter referred to as the "Marina."

6. Lee's Ford Dock, Inc. ("Lee's Ford Dock") is the main operating entity of the Debtors. It manages the Dock, the Lodging Facilities, the Restaurant, and the Ship's Store, and employs all related employees. It also owns approximately 1.25 acres surrounding the Dock, and it

leases the Lake Cumberland waterfront property (36 land acres and 130 water acres) upon which the Dock and related property are located from the Secretary of the Army (by and through the U.S. Army Corps of Engineers) pursuant to a Lease for Commercial Concession Purposes entered into by these parties in August 2000 (the "Corps Lease").

7. The Lodging Facilities include a five-room hotel (the "Hotel"), eight apartments in a condominium association (the "Condominiums"), sixteen rental cottages (the "Cottages"), and one Harbor Cottage House Boat (the "Harbor Cottage"). The Condominiums are owned by Lee's Ford Hotels, LLC ("Lee's Ford Hotels"), the Harbor Cottage is owned by Lee's Ford Dock, and the Hotel and Cottages are leased by Lee's Ford Dock under the Corps Lease. Lee's Ford Dock manages the rental and maintenance of all of the Lodging Facilities. In addition to these real properties, Lee's Ford Woods, LLC ("Lee's Ford Woods") owns approximately 2.8 acres of raw land adjacent to the Marina. Lee's Ford Hotels also owns an approximately 3500 square foot building comprised of retail space and one apartment, which is located on the same lot as the Condominiums.

8. Top Shelf Marine Sales, Inc. ("Top Shelf") owns and operates the boat brokerage business located in the Ship's Store that is known as BuyaBoat.net, which offers brokerage services to both buyers and sellers of various types of boats and related accessories and operates a web site located at www.buyaboat.net. Hamilton Brokerage, LLC ("Hamilton Brokerage") and Hamilton Capital, LLC ("Hamilton Capital") are not actively involved in the Debtors' operations but are holding companies set up as part of the structure of the original purchase transactions which began in 2003. Hamilton Capital is the sole shareholder of Top Shelf. Hamilton Capital is the sole shareholder of Lee's Ford Dock and the sole member of Lee's Ford Hotels and Lee's Ford Woods.

9. The lowering of the water level of Lake Cumberland in January 2007 to allow for repairs to Wolf Creek Dam has been widely publicized and reduced the Lake's surface area by several thousand acres. The Debtors' operations were greatly affected, and the Debtors were forced to incur extraordinary costs to relocate the Dock and related facilities in accordance with the new water level. In addition to these relocation costs, the overall revenues dropped in direct conjunction with the lowering, which is true for most, if not all, operations that existed in the shallower portions of the lake like Debtors' location.

10. While the Debtors have pursued many avenues in an effort to address the multiple financial and operational issues created by the continuing unknowns and multiple extended estimated completion dates of the Wolf Creek Dam repairs, bank loan maturity coupled with alleged payment defaults under the Corps Lease left little option except for the development of a joint plan to restructure operations and debt for the benefit of all creditors and parties in interest. Accordingly, the Debtors filed for Chapter 11 bankruptcy on July 4, 2012 and continue to operate their businesses as debtors in possession.

11. Contemporaneously herewith, the Debtors filed their Joint Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code and related Disclosure Statement.

**The DIP Loan**

12. The Debtors' business is largely seasonal, with the highest revenues generated during slip renewal season in December through April and during the summer boating season. The seasonal nature of the business has historically and continues to create cyclical cash flow. In the years prior to the commencement of their bankruptcy cases, the Debtors had a $500,000 and then a $250,000 revolving line of credit from their primary secured lender, Branch Banking & Trust Company

("BB&T"). This line of credit from BB&T originated as part of the initial BB&T loan transactions with certain of the Debtors in October 2003. As of the Petition Date, the Debtors did not owe any balance on the BB&T line of credit. Postpetition, BB&T declined to provide the Debtors with availability under the line and terminated the line of credit. In addition to BB&T, the Debtors also contacted Central Bank, Wilson & Muir Bank & Trust Co., and Lincoln National Bank to request a postpetition line of credit financing, but all declined.

13.     As part of their overall strategy to reorganize and emerge from bankruptcy, the Debtors have determined in their business judgment that it is necessary to obtain a new line of credit that will assist the Debtors with operating through their anticipated fall cyclical cash flow and with expenses associated with preparing for the return of normal water levels at Lake Cumberland. The DIP Lender has agreed to provide Lee's Ford Dock with the DIP Loan in the form of a revolving line of credit in the amount of $500,000.00. In exchange for its agreement to provide the DIP Loan to Lee's Ford Dock (which will, in turn, benefit the Debtors' collective marina operations), the DIP Lender requires that the remaining Debtors, the Hamilton Revocable Trust (which is the sole member of Hamilton Capital and Hamilton Brokerage), and James D. Hamilton (the Trustee of the Trust), individually, all guarantee the DIP Loan, and that all Debtors grant first-priority priming[1] liens in favor of the DIP Lender on all of their assets (the "DIP Loan Collateral").

14.     The Debtors are not aware of any other lender who would be willing to provide the required DIP Loan on an unsecured basis, as an administrative expense, or secured only by a junior lien on the Debtors' assets.

---

[1] The liens of the DIP Lender on the DIP Loan Collateral shall be first-priority priming liens, superior to any and all prior liens of BB&T and the U.S. Small Business Administration on the DIP Loan Collateral.

15. A true and accurate copy of a letter (the "Commitment Letter") from the DIP Lender committing to provide the DIP Loan described herein is attached hereto as Exhibit A. The draft loan documents (the "DIP Loan Documents") relating to the DIP Loan and the related grant of liens on and security interests in the Debtors' assets will be filed as soon as they are received and are incorporated herein by reference.

## RULE 4001 STATEMENT

16. Pursuant to KYEB LBR 4001-2(a) and Fed. R. Bankr. P. 4001(c)(1)(B), the Debtors submit this concise statement of the material terms of the DIP Loan:[2]

(a) *Total Dollar Amount Requested:* $500,000.00 revolving line of credit

(b) *Use of Funds and Proposed Budget:* To accommodate the Debtors' naturally seasonal business and revenue stream, the Debtors will use the proceeds of the DIP Loan on an as-needed basis to assist with operating through their anticipated fall cyclical cash flow and with expenses associated with preparing for the return of normal water levels at Lake Cumberland. Financial projections detailing the Debtors' anticipated operating expenses over the next five years are included with the Disclosure Statement for the Debtors' Joint Plan of Reorganization filed contemporaneously herewith.

(c) *Summary of Line of Credit Terms:* Upon Court approval, the DIP Lender will provide Lee's Ford Dock with the DIP Loan secured by a first-priority lien on all assets of the Debtors, as described more specifically in the Commitment Letter, as well as guarantees by all of the remaining Debtors, the Hamilton Revocable Trust (which is the sole member of Hamilton Capital and Hamilton Brokerage), and James D. Hamilton (the Trustee of the Trust), individually. The DIP Loan will bear interest at the Wall Street Journal Prime Rate, adjusted daily, with a floor of 5.75%. Interest on the outstanding balance of the DIP Loan will be due monthly, and all outstanding principal and interest will be due at maturity, which is twelve months from the issuance of the DIP Loan. The non-refundable origination fee for obtaining the DIP Loan is $5,000. Other fees and costs relating to the DIP Loan are estimated to be $18,000, for total fees and costs associated with obtaining the DIP Loan of approximately $23,000.

---

[2] To the extent that there is a conflict between the terms of the Commitment Letter, the DIP Loan Documents, and any summary of same in this Motion, the terms of the DIP Loan Documents shall control.

(d) *Debt Owed to Creditors Claiming an Interest in Collateral:* Creditors claiming an interest in the DIP Loan Collateral are as follows:

(i) **BB&T.** As of the commencement of these bankruptcy cases, BB&T was owed a total of $5,162,868.29. As security for this amount, BB&T asserts first-priority liens on basically all assets of the Debtors, including, but not limited to the assets described in this paragraph. BB&T asserts first-priority mortgage liens on: (1) real property located at 21 and 81 Lee's Ford Dock Road, Nancy Kentucky, owned by Lee's Ford Hotels; (2) real property located at 451 Lee's Ford Dock Road, owned by Lee's Ford Dock; and (3) 2.59 acres on Lee's Ford Dock Road owned by Lee's Ford Woods. BB&T further asserts a first-priority leasehold mortgage on the property Lee's Ford Dock leases from the Corps located at 451 Lee's Ford Dock Road. Additionally, BB&T asserts first-priority security interests in: (1) all assets of Lee's Ford Hotels and Lee's Ford Woods; and (2) the accounts, inventory, equipment, deposit accounts, chattel paper, general intangibles, and supporting obligations of Lee's Ford Dock and Top Shelf.

(ii) **The SBA.** As of the commencement of these bankruptcy cases, the U.S. Small Business Administration ("SBA") was owed a total of $4,099,812.75. As security for this amount, the SBA asserts second-priority mortgage liens on: (1) real property located at 21 and 81 Lee's Ford Dock Road, Nancy, Kentucky, owned by Lee's Ford Hotels; (2) real property located at 451 Lee's Ford Dock Road, Nancy, Kentucky, owned by Lee's Ford Dock; and 2.59 acres on Lee's Ford Dock Road, owned by Lee's Ford Woods. The SBA further asserts a second-priority leasehold mortgage on the property Lee's Ford Dock leases from the Corps located at 451 Lee's Ford Dock Road. Additionally, the SBA asserts second-priority security interests in the inventory, fixtures, accounts receivable, machinery, and equipment (excluding automotive) of Lee's Ford Dock and Top Shelf.

## RELIEF REQUESTED

17. By this Motion, the Debtors respectfully request that the Court enter an order: (a) authorizing Lee's Ford Dock to obtain the DIP Loan from the DIP Lender; (b) authorizing the remaining Debtors to guarantee the DIP Loan; (c) authorizing all of the Debtors to grant the DIP Lender first-priority liens against all of the Debtors' assets as security for the DIP Loan; (d) authorizing the Debtors to pay the DIP Lender all reasonable and customary fees, costs, and expenses up to a maximum of $23,000 incurred in connection with obtaining the DIP Loan; and (e) modifying

the automatic stay to allow the DIP Lender to take such actions as necessary to finalize the DIP Loan transaction.

**BASIS FOR REQUESTED RELIEF**

18. Section 364(d) of the Bankruptcy Code provide bankruptcy courts with the power, after notice and a hearing, to authorize a debtor in possession[3] to obtain postpetition credit "secured by a senior or equal lien on property of the estate that is subject to a lien . . . ," which is often referred to as a "priming lien." 11 U.S.C. § 364(d)(1). Before a court may authorize such financing, it must find: (a) that "the [debtor in possession] is unable to obtain such credit otherwise," and (b) that, absent the consent of the secured creditor sought to be primed, "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior of equal lien is proposed to be granted." *Id.* at (d)(1)(A)-(B). Both of these elements are satisfied with respect to the DIP Loan.

**A. No Comparable Alternative to the DIP Loan is Currently Available.**

19. As Section 364(d)(1)(A) "fails to explicitly provide how extensive the debtor's efforts to obtain credit must be . . . the court must make its decisions on a case by case basis." *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). To satisfy the first element of Section 364(d), a debtor in possession must "demonstrate[ ] by a good faith effort that credit was not available without the senior lien," but "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Bray v. Shenendoah Fed. Sav. Bank and Loan Assoc., et al. (In re Snowshoe Co., Inc.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). "This is particularly true when . . . time is of the essence in an effort to preserve a vulnerable seasonable enterprise." *Id.*

---

[3] Section 1107 of the Bankruptcy Code gives debtors in possession the same powers as a trustee (with exceptions that are not relevant here).

Indeed courts often recognize that where there are few lenders likely, able, and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [a debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd, sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117 (N.D. Ga. 1989).

20.     On multiple occasions, the Debtors have requested that their existing senior lender, BB&T, provide them with availability under their prepetition line of credit, but BB&T has continually declined to allow any further availability.  The Debtors also attempted to obtain line of credit financing from Central Bank, Wilson & Muir Bank & Trust Co., and Lincoln National Bank, but all three also declined to extend such credit on either an unsecured or secured basis.  The DIP Lender declined to extend the DIP Loan on an unsecured basis or administrative priority claim basis, requiring instead that the Debtors give it first-priority priming liens on the DIP Loan Collateral pursuant to 11 U.S.C. § 364(d) before it would provide the requisite financing.  In light of the Debtors' current financial condition and being in Chapter 11, the Debtors believe that any remaining sources of comparable credit, obtainable quickly and on reasonable terms, are extraordinarily limited.  Against this background, the Debtors believe in their business judgment that they have made a good faith effort to obtain credit on an unsecured basis or secured only by a junior lien on their assets, but they are unable to do so under the circumstances.  Therefore, the Debtors assert that they have satisfied the requirements of 11 U.S.C. § 364(d)(1)(A) with respect to the DIP Loan.

**B.     The Interests of the Prepetition Secured Parties are Adequately Protected.**

21.     The Bankruptcy Code does not explicitly define "adequate protection" as it is used in 11 U.S.C. § 364(d)(1)(B).  However, 11 U.S.C. § 361 suggests that adequate protection may be provided by:  (i) periodic cash payments to the extent that the grant of a lien under Section 364

results in a decrease in the value of the lienholder's interest in the property; (ii) providing additional or replacement liens; or (iii) other relief resulting in the realization of the "indubitable equivalent" of the lien holder's interest in the property. "The last possibility is regarded as a catch all, allowing courts discretion in fashioning the protection provided to a secured party," and "[t]herefore, a determination of whether there is adequate protection is made on a case by case basis." *The Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d. Cir. 1994) (citing *In re O'Connor*, 808 F.2d 1393, 1397 (10th Cir. 1987)).

22. When evaluating whether adequate protection is present under 11 U.S.C. § 364(d)(1)(B), courts have found that a creditor may be adequately protected if an ample equity cushion exists. The term "equity cushion" has been defined as "the value in the property, above the amount owed to the [secured] creditors . . . , that will shield that interest from loss due to any decrease in the value of the property during [the] time the automatic stay remains in effect." *In re Norton*, 347 B.R. 291, 298 (Bankr. E.D. Tenn. 2006) (citing *Sumitomo Trust & Banking Co. v. Holly's, Inc. (In re Holly's, Inc.)*, 140 B.R. 643, 698 n. 87 (Bankr. W.D. Mich. 1992)). Several courts have held that a substantial equity cushion may, in and of itself, provide adequate protection of a secured creditor's interest in collateral. *See, e.g., In re Phoenix Steel Corp.*, 39 B.R. 218, 224 ("An equity cushion has, however, been held to constitute adequate protection.") (internal citations omitted); *In re Heath*, 79 B.R. 616, 618 (Bankr. E.D. Pa. 1987) ("The existence of an equity cushion may provide sufficient protection of a lender's interests. Application of the equity cushion concept has been so widespread that it has been denominated a 'classic form' of protection for secured debt.") (internal citation omitted); *In re Indian Palms Assocs., Ltd., B.C. (Indian Palms Assocs.)*, 61 F.3d 197, 207 (3rd Cir. 1995) (noting that "[i]n determining whether a secured creditor's interest is

adequately protected, most courts engage in an analysis of the property's "equity cushion . . . .") (internal citations omitted); *In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987) ("[c]ase law has established that the existence of an equity cushion may, in and of itself, constitute adequate protection of an over-secured creditor") (internal citations omitted); *In re Sharon Steel Corp.*, 159 B.R. 165, 169 (Bankr. W.D. Pa. 1993) ("the existence of an equity cushion alone can constitute adequate protection") (internal citations omitted).

23. Based on the appraisals obtained in July 2013 by the DIP Lender, the Debtors' assets have a total value of $15,755,000. The prepetition amounts of the secured claims of BB&T and the SBA total approximately $9.26 million. Thus, even with the addition of the $500,000 DIP Loan, there is equity of more than $5.9 million in the Debtors' assets. The Debtors submit that this substantial equity cushion provides BB&T and the SBA with the adequate protection required by 11 U.S.C. § 364(d)(1)(B).

24. BB&T and the SBA are further adequately protected because the DIP Loan will afford the Debtors the financing needed to ensure that their operations smoothly continue year-round, even in the historically low points in their operational year and as they prepare for the return of Lake Cumberland to normal water levels. Absent this necessary financing, the Debtors run the risk that an unforeseen event could deplete their cash reserves in the tight fall months, which would result in immediate and irreparable harm to their business, decrease the going-concern value of their business, and jeopardize their ability to continue operating. The Debtors believe in their business judgment that the protection afforded by the DIP Loan line of credit, coupled with the plans set forth in the Debtors' Joint Plan of Reorganization filed contemporaneously herewith, will help to ensure that the Debtors successfully reorganize and emerge from Chapter 11, thereby preserving the value of their

businesses for the benefit of all of their creditors and parties in interest, specifically including BB&T and the SBA.

25.  To the extent approved in subsequent cash collateral budgets, the Debtors will continue paying BB&T adequate protection payments of $15,000.00 per month until the Plan is confirmed, as they have throughout these bankruptcy cases, which provides additional adequate protection. The Debtors' timely payments of these monthly adequate protection amounts towards BB&T's senior lien will continue to adequately protect the interests of the SBA's junior lien.

26.  When viewed together, the facts and circumstances of these case clearly indicate that the Debtors have satisfied their burden to demonstrate that the interests of BB&T and the SBA in the DIP Loan Collateral will be adequately protected as required by 11 U.S.C. § 364(d)(1)(B).

    **C.**    **Approval of the DIP Loan is in the Best Interests of the Debtors' Estates.**

27.  As long as they are "made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the Code," bankruptcy courts generally will not second-guess a decision made in the exercise of a debtor in possession's business judgment. *In re Curlew Valley Assocs.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981); *see also In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control for administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985). Thus, "cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as

the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest." *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990); *see also In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the DIP loans were approved because they "reflect[ed] sound and prudent business judgment . . . [were] reasonable under the circumstances and in the best interests of [the debtor] and its creditors."); *In re Barbara K Enters.*, Case No. 08-11474, 2008 Bankr. LEXIS 1917, at *40, (Bankr. S.D.N.Y. June 16, 2008) (noting that a bankruptcy court's "normal function in reviewing requests for post-petition financing is to deter to a debtor's own business judgment so long as a request for financing 'does not leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest.").

28.    The DIP Loan satisfies all requirements of 11 U.S.C. § 364(d) and reflects the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties. For many years prior to entering bankruptcy, the Debtors utilized a revolving line of credit as part of their overall cash management plan to ensure that their operations continued during their seasonably slow months. This line of credit further served to protect the Debtors' operations by affording them a cash cushion that could be drawn upon in the event of a large, unanticipated expense. Although the Debtors have managed their cash throughout these bankruptcy cases without the assistance of a line of credit, the Debtors believe in their business judgment that obtaining a replacement revolver as part of their overall strategy to exit Chapter 11 and continue operations in the long-term is necessary and reasonable and will ultimately benefit all creditors and parties in interest.

29.    The DIP Loan is the product of good-faith, arms-length negotiations between the Debtors and the DIP Lender and is supported by reasonably equivalent value and fair consideration.

The Debtors believe that the terms and conditions of the DIP Loan, including the fees, costs, and expenses related to obtaining the DIP Loan, are fair, just, and reasonable under the circumstances and that the DIP Loan is appropriate for financing to debtors in possession. Therefore, the Debtors respectfully submit that their request for Lee's Ford Dock to obtain the DIP Loan from the DIP Lender, including paying the related costs, fees, and expenses, for the remaining Debtors to guarantee the DIP Loan, and for all Debtors to pledge all of their assets as security for the DIP Loan Collateral is warranted under the Bankruptcy Code and is in the best interests of their Estates and all creditors and parties in interest.

### D. **Modification of the Automatic Stay**

30. Pursuant to 11 U.S.C. § 362(d)(1), the Court can modify the automatic stay provided under Section 362(a) on the request of a party in interest "for cause" after notice and a hearing. Out of an abundance of caution, the Debtors respectfully request that any order granting this motion state that the automatic stay provided by 11 U.S.C. § 362(a) is modified to the extent necessary to permit the DIP Lender to perform all acts and take all necessary actions to implement said order and issue the DIP Loan.

### E. **Waiver of Fed. R. Bankr. P. 4001(a)(3) and 7004(h) Stays of Order**

31. The Debtors anticipate that an order granting the Motion, if any, will be entered in late September or early October, which is the start of the Debtors' historically low point in the year. So that the Debtors can move forward with the DIP Loan transaction without delay, the Debtors respectfully request that any order granting this Motion provide that the fourteen-day stays of the order imposed by Fed. R. Bankr. P. 4001(a)(3) and 7004(h) be waived and the order be effective immediately upon entry.

WHEREFORE, the Debtors respectfully request that the Court enter an Order: (a) authorizing Lee's Ford Dock to obtain the DIP Loan from the DIP Lender; (b) authorizing the remaining Debtors to guarantee the DIP Loan; (c) authorizing the Debtors to grant the DIP Lender first-priority liens against all of the Debtors' assets as security for the DIP Loan; (d) authorizing the Debtors to pay the DIP Lender for all reasonable and customary fees, costs, and expenses up to a maximum of $23,000 incurred in connection with obtaining the DIP Loan; (e) modifying the automatic stay to allow the DIP Lender to take such actions as necessary to finalize the DIP Loan transaction; and (f) granting the Debtors such other and further relief as the Court deems just and proper under the circumstances.

## **NOTICE**

Notice is hereby given that the foregoing shall be brought on for hearing before the United States Bankruptcy Court for the Eastern District of Kentucky, 100 East Vine Street, Third Floor, Lexington, Kentucky, on Wednesday, September 25, 2013, at the hour of 9:30 a.m. (EDT), or as soon thereafter as counsel may be heard.

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Amelia Martin Adams, Esq.
KY Bar No. 93038
Laura Day DelCotto, Esq.
KY Bar No. 81763
200 North Upper Street
Lexington, KY 40507
Telephone:  (859) 231-5800
Facsimile:   (859) 281-1179
aadams@dlgfirm.com
ldelcotto@dlgfirm.com
COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION

**CERTIFICATE OF SERVICE**

       In addition to the parties who will be served electronically by the Court's ECF System, the undersigned certifies that a true and accurate copy of the foregoing will be served by first class mail, postage prepaid, and/or electronic mail, as indicated, upon the parties listed on Master Service List No. 4 [Doc 267] and first class mail on the parties listed below on August 22, 2013.

| | |
|---|---|
| U.S. Attorney's Office<br>Eastern District of Kentucky<br>Attn: Civil Process Clerk<br>260 W. Vine Street, Suite 300<br>Lexington, KY 40507-1612 | David Middleton, Esq.<br>U.S. Attorney's Office<br>Eastern District of Kentucky<br>260 W. Vine Street, Suite 300<br>Lexington, KY 40507-1612 |
| U.S. Small Business Administration<br>Attn: Linda R. George, Esq.<br>Mazzoli Federal Building, Room 188<br>600 Dr. Martin Luther King, Jr. Place<br>Louisville, KY 40202 | Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 |
| Branch Banking & Trust Company<br>c/o Martin B. Tucker, Esq.<br>Frost Brown Todd LLC<br>Lexington Financial Center<br>250 West Main Street, Suite 2800<br>Lexington, KY 40507-1749 | Branch Banking & Trust Company<br>100 West Vine Street<br>Lexington, KY 40507 |
| Secretary of the Army<br>c/o Nashville District<br>U.S. Army Corps of Engineers<br>Chief, Real Estate Division<br>801 Broadway<br>Nashville, TN 37203-3816 | Department of the Army<br>Nashville District Corps of Engineers<br>P.O. Box 1070<br>Nashville, TN 37202-1070 |
| Office of The United States Trustee<br>Eastern District of Kentucky<br>100 East Vine Street, Suite 500<br>Lexington, KY 40507 | |

                                                /s/ Amelia Martin Adams, Esq.
                                                COUNSEL FOR DEBTORS AND
                                                DEBTORS IN POSSESSION

Pleadings\DIP Financing Mot 20130822.doc